# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FIONA PARNIGONI, Personally and on behalf of her son, Andrew Parnigoni, a minor<br>4412 S. 34th St.<br>Arlington, VA 22206 | ) ) ) ) ) ) | |
| and | ) ) | **CASE NO. 1:08-cv-613 (RBW)** |
| DAVID PARNIGONI, Personally and on behalf of his son, Andrew Parnigoni, a minor<br>4412 S. 34th St.<br>Arlington, VA 22206 | ) ) ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| and | ) ) | |
| ANDREW PARNIGONI, a minor<br>4412 S. 34th St.<br>Arlington, VA 22206 | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| ST. COLUMBA'S NURSERY SCHOOL,<br>4201 Albemarle Street, NW<br>Washington, DC 20016 | ) ) ) ) ) | |
| and | ) ) | |
| ST. COLUMBA'S EPISCOPAL CHURCH<br>4201 Albemarle Street, NW<br>Washington, DC 20016 | ) ) ) ) | |
| and | ) ) | |
| VESTRY OF ST. COLUMBA'S PARISH<br>4201 Albemarle Street, NW<br>Washington, DC 20016 | ) ) ) ) ) | |
| REV. JANET VINCENT<br>4974 Sentinel Drive<br>Bethesda, MD 20816 | ) ) ) ) | |



and

JULIA H. BERRY
109 South Brook Lane
Bethesda, MD 20814

                            Defendants.

## AMENDED COMPLAINT

Fiona and David Parnigoni, individually and on behalf of their minor son, Andrew Parnigoni, for their Amended Complaint against St. Columba's Nursery School, St. Columba's Episcopal Church, Vestry of St. Columba's Parish, Janet Vincent, and Julia Berry, state as follows:

### I.    The Parties

1.    Plaintiff Fiona Parnigoni is a resident of Arlington, Virginia.  Mrs. Parnigoni is married to co-Plaintiff, David Parnigoni.  David and Fiona have a three-year-old son, co-Plaintiff Andrew Parnigoni.

2.    At all times relevant to this action, Mrs. Parnigoni was employed by St. Columba's Nursery School as a nursery schoolteacher in Washington, DC.

3.    Plaintiff Andrew Parnigoni was a student of St. Columba's Nursery School until the Defendants' actions, which are the subject of this civil action, compelled his parents to withdraw him from the school.

4.    Defendant St. Columba's Nursery School (the "School") is a District of Columbia corporation located at 4201 Albemarle Street, NW in Washington, DC.

5.   Defendant St. Columba's Episcopal Church ("Church") is a District of Columbia corporation located at 4201 Albemarle Street, NW in Washington, DC.

6.   Defendant Vestry of St. Columba's Parish ("Vestry") is the administrative committee of the Church, and is a District of Columbia corporation located at 4201 Albemarle Street, NW in Washington, DC.  The twelve members of the Vestry are elected by the Church's parish to serve as its Board of Directors and legal agent.  The Vestry includes Janet Vincent (the current Rector), Jim Sivon, Kathleen Stanley, Patrice Allen-Gifford, Constance Azzi, Dawn Booth, Florri DeCell, Reid Detchon, John Guenther, David Hawkings, Lane Heard, Peter Hildebrand, Andrew Hullinger, Larry Smith and Barbara Woodall Kragie.

7.   Defendant Rev. Janet Vincent ("Vincent" or "Rector") is the Rector of the Church and is a resident of the State of Maryland.

8.   Defendant Julia Berry ("Berry" or "Director") is the Director of the School and is a resident of the State of Maryland.

## II.    Jurisdiction and Venue

9.   This Court has jurisdiction over this matter based on the diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332(a)(1).  The amount in controversy exceeds the sum or value of $75,000, exclusive of interest or costs.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) and (a)(3).

## III.    Background Facts

11. Fiona Parnigoni has been a valued and respected teacher at St. Columba's School since 2001.  She is a dedicated teacher who has always had her students' best

interest at heart.  She is well regarded by the parents of her students and her colleagues.
During her seven-year tenure, she has never been the subject of any form of discipline or
any alleged impropriety.  She has always carried out her duties to the school with the
utmost diligence, enthusiasm and dedication.

12. In the seven years Mrs. Parnigoni worked as a nursery school teacher at St.
Columba's, there has never been an instance where a child was at risk of being
endangered or harmed in any way.

13. In 2004, Mrs. Parnigoni's husband (fiancée at that time), David Parnigoni,
was charged and convicted of indecent exposure to a minor.  The case against Mr.
Parnigoni, which is on appeal, did not contain any allegations of inappropriate contact or
actions with a minor.  Mrs. Parnigoni was in no way involved in this incident and has no
connection whatsoever to Mr. Parnigoni's criminal case.  Her name and association with
David Parnigoni was never, prior to the time of the Defendants' actions that are the
subject of this civil action, published nor disseminated to the public.

14. David Parnigoni is in no way affiliated with the school or parish at St.
Columba's.  No member of his family is a member of St. Columba's parish.

15. Plaintiff Fiona Parnigoni was employed as a teacher at St. Columba's School
in 2004, during the time in which David Parnigoni's criminal case was pending.  Mrs.
Parnigoni informed Karen Strimple, the Director of the School at the time, of the
situation regarding her husband.  Upon information and belief, Ms. Strimple informed the
Board of Governors of the Church (the "Board") and the Rev. James Donald, the Rector
at the time, of Mr. Parnigoni's situation.

16. Defendants took no action at that time because they determined that no action was necessary or warranted.

17. Mrs. Parnigoni continued to work at the Nursery School without any further discussion or incident. It was never expressed to Mrs. Parnigoni that her marriage to Mr. Parnigoni was a cause for concern for the Church or the School or that her job was in jeopardy as a result.

18. Over three years later, in August 2007, Julia Berry, who replaced Karen Strimple as Director of the School in 2006, met with Mrs. Parnigoni and demanded that Mrs. Parnigoni provide details regarding her husband's 2004 conviction. The Director explained that Mrs. Parnigoni was required to disclose the details of her husband's conviction so that the Director could explain it to any parent who might ask a question regarding it. The Plaintiff informed the Director that no parent had ever asked the previous director about her husband's case but, nevertheless, she provided Ms. Berry with all of the information she requested. Mrs. Parnigoni also offered Ms. Berry the opportunity to speak with her husband's lawyers, if she felt it necessary.

19. Around this time, Mrs. Parnigoni enrolled her three-year-old son, Andrew Parnigoni, in the School. The Parnigonis had submitted an application to the School on behalf of Andrew in February 2007. The School notified the Parnigonis of his acceptance in March 2007. At no time did the Defendants notify the Parnigonis that if they enrolled Andrew at the School, that a public disclosure would be made regarding Andrew's enrollment and that his father, David Parnigoni, was a convicted sex offender.

20. On September 6, 2007, the first day of the 2007-2008 term for teachers, the Director informed Mrs. Parnigoni that the Board was "nervous" about her husband's

2004 conviction.  Upon information and belief, the Board became nervous about the over three-year-old incident because, since her son Andrew was enrolled in the School, Mr. Parnigoni might have reason to be on the School property to pick him up.

21. Mrs. Parnigoni informed the Director that she would walk Andrew off school grounds a block away on the single day per week when her husband was required to pick Andrew up from school.  This was in compliance with the unwritten agreement that was in place since Mr. Parnigoni's conviction that he would not be present at the School. Shortly after the September 6, 2007 discussion, the Director informed Mrs. Parnigoni that the Board felt "relieved" in light of Mrs. Parnigoni's decision to walk Andrew off the premises to her husband's car.

22. The Director then asked Mrs. Parnigoni to share her husband's lawyer's contact information so that St. Columba's counsel could make a "courtesy call." Mrs. Parnigoni complied.  The Church's legal counsel contacted Mr. Parnigoni's attorney and informed him that based on the steps that have been put in place, "everything is fine" and that the Parnigonis need not be worried and that they would not hear from the Church again on this issue.

23. On September 17, 2007, Andrew Parnigoni attended his first day at the School.

24. On October 1, 2007 the Director pulled Mrs. Parnigoni aside after a staff meeting to inform her that the Rector, Janet Vincent, wanted to meet with her. This was unusual because the Rector, who is the head of the Church, was rarely involved with issues pertaining to employees of the School.  This meeting was held two days later on October 3, 2007.

25. Attendees of the October 3, 2007 meeting included, the Rector, the Director, Church's counsel, Wendall Belew, Chairman of the Board of Governors, Mrs. Parnigoni and her counsel.  The Rector announced that the purpose of this meeting was to inform the meeting attendees of her decision to make a full public disclosure and that she would not entertain any discussion or plea to change her decision. The Church intended to disclose to all parents of students of the Nursery School and the entire Parish of David Parnigoni's 2004 conviction and the fact that Mrs. Parnigoni, a teacher of the school, was married to a convicted sex offender. The Rector repeated that she was not willing to negotiate but only to inform.

26. Since there was no mention of any issue with her marriage to David Parnigoni in the over three years since his conviction, Mrs. Parnigoni assumed that the Church's decision was due to her son's enrollment at the school.  In order to avoid embarrassment to her and her family, Mrs. Parnigoni asked whether she could withdraw Andrew from the School to avert the embarrassing disclosure.  She was informed by Church's counsel that it would certainly "help" if Andrew was not a student of the school and that she was encouraged to withdraw him from the School.

27. Mrs. Parnigoni removed Andrew from the School on or about October 1, 2007 and scrambled to find suitable daycare for him.

28. Around this time, Mrs. Parnigoni offered to resign her position at the school in order to avert public disclosure.  Her offer was rejected outright.

29. On Friday, October 12, 2007, the Director, Julia Berry, met with Mrs. Parnigoni's co-teacher and two other colleagues.  During this meeting, the Director stated that while she was sorry that this had happened to Mrs. Parnigoni, she put the blame for

the entire situation on Mrs. Parnigoni, and declared that if Mrs. Parnigoni had not married David Parnigoni, she "would not be in this position."

30. On the same day, October 12, 2007, the Director emailed Mrs. Parnigoni, prohibiting her from attending school on the following Monday, October 15, 2007 because the Rector wanted to address the staff of the school regarding the upcoming "disclosure" without her being present.

31. On or about October 15, 2007, the Rector addressed the school staff to inform them about the public disclosure that would be made regarding David and Fiona Parnigoni. During this meeting, the Rector made it clear to those present that this decision was based solely on what she termed as Mrs. Parnigoni's "poor judgment in marrying David." The Director affirmatively rejected the idea that the disclosure was premised on concerns that arose because of Andrew's enrollment in the School. When asked by a staff member whether Mrs. Parnigoni's resignation would alleviate the purported need for disclosure, the Rector said that it would not make a difference, that disclosure was a direct consequence of "Fiona marrying Dave" and that the disclosure would be made even if she resigned. Moreover, the disclosure would be repeated on an annual basis going forward. The Rector then stated that she was there to inform and not to answer questions.

32. On or about October 18, 2007, Janet Vincent, the Rector, sent a letter (the "October 18, 2007 letter") to the parents of the students of the School and to all members of the Church's parish. The letter stated, in part:

Dear St. Columba Parishioners and School Parents,

St. Columba's loves children.  We love and nurture them in our varied parish programs and through our Nursery School.  **We also take seriously our responsibility to provide them with the safest possible environment in which to thrive and grow.**

One way of ensuring the protection of our children is to keep parents and all of our members informed about the ways in which we safeguard our youngest members and students.

…

On Sept. 20, 2007, Emily Gowdy Canady (Director of Youth Ministries), Martin Smith (Senior Associate Rector), Julia Berry (Director, St. Columba's Nursery School), Wendell Belew (Chair, St. Columba's Nursery School Board of Governors) and I met with attorneys Mark Biros and Meredith Bailey of Proskauer Rose LLP.  As a result of that meeting, their subsequent written advice, further meetings and our revised Standards, Policies and Procedures, I write to give you information already in the public domain **but perhaps not known to all parishioners and Nursery School parents**:

- Mr. David Parnigoni, the husband of Fiona Parnigoni, a teacher at St. Columba's Nursery School since June 2001, is registered with the Virginia Sex Offender and Crimes Against Minors Registry as a result of a July 3, 2004 conviction for indecent exposure to a minor.  Until recently their son attended the Nursery School.  I want to assure you that steps have been taken to prevent Mr. Parnigoni from entering St. Columba's grounds or participating in St. Columba's Nursery School events.  **I am providing you this notice to enable you to make informed decisions as to whom you entrust the care and supervision of your child**.  This disclosure is in no way intended to harm the Parnigoni family.  Given the seriousness of the issue and **our inability to anticipate every possible future scenario we believe our best course of action is to give parents the information they need to protect their children**.  Mrs. Parnigoni has been informed of this decision to disclose.  We did not ask the Parnigonis to remove their son from the school.

…

**These are sad disclosures but they are necessary for the sake of our children**…I also make them with complete confidence that **you are entitled to information that may impact the safety of your children.  It is important to note that I am not disclosing the attempted abuse or abuse of a child in our care.**

These policies and disclosures will raise questions for some and so the wardens, Chair of the Nursery School Board of Governors and I invite you

to a special meeting for parish members and Nursery School families to be held on Thurs., Nov. 1, 2007 at 7:00 p.m. in the Great Hall.  Julia Berry and Emily Gowdy Canady will round out the panel and we will answer questions and discuss concerns…

Sincerely,

The Rev. Janet Vincent
Rector

(emphasis added)

33. Over 3,500 households in the D.C. metropolitan area received the October 18, 2007 letter.  It is unknown how many thousands of individuals read the letter.

34. On the same day that the letter was sent to the parents and the entire parish, Julia Berry, sent an email to the DC Directors' Exchange list-serve, a group consisting of approximately 37 nursery school directors in the Washington, D.C. area, to request advice on the situation at St. Columba's.  In the email Julia Berry stated, in part:

> I have a big issue topic that we might tackle as it has just hit the fan here at St. Columba's this very day. Ready?
>
> I have a teacher who is married to a registered sex offender. Since her marriage to him five years ago**, the school has had a "husband may not come onto the premises" policy which has seemingly served well** particularly since the incident was well known in our community as well as the neighboring elementary school. This year her son was admitted to the school and i [sic] approached the board about the legal status of the child, mother/teacher, and husband. I also went to the Rector. In short order, the Rector and others upstairs had retained an attorney, changed the policy of the church to state that full disclosure would be made in all instance….
>
> We had some cataclysmic meeting with both sets of attorneys (our recommended that she be fired), **the child was withdrawn from school, the teacher offered to resign if we would not disclose, but as of today, full disclosure has been made to the entire parish as well as the school (several thousand people)**. Needless to say, my staff (some of them anyhow) are angry bitter etc etc. The letters are landing in mailboxes today and tomorrow…
>
> …

10

(emphasis added).

35. As a result of the Director's email, virtually every school director in the Washington, D.C. area became aware of Ms. Parnigoni's private circumstances. The recipients were all prospective employers of Mrs. Parnigoni.

36. Upon information and belief, the "Standards, Policies and Procedures for Ministries Involving Children and Young People" referenced in Director Berry's email to the Director list-serve were established on September 11, 2007, and St. Columba's is the only parish to enact such a disclosure policy.

37. Shortly after the October 18, 2007 letter was sent, Defendant Berry met with Mrs. Parnigoni and informed her that the Board would renew her contract for the next year and that her teaching position with the school was safe and that she need not worry as the "storm would soon pass."

38. Per the October 18, 2007 letter, on November 1, 2007 a meeting, open to the public, was held to address any questions or concerns that the letter might have raised. Upon information and belief, some attendees of the meeting indicated that they believed the Rector's letter unfairly cast Mrs. Parnigoni as a threat to children.

39. On October 31, 2007, the Parnigoni family received a letter from a parent who wrote in part:

> I think that it's equally important that you realize that there are many of us who you don't know- both parents of the Nursery and people within this community – who recognize the incredible toll this must be on you and your family, and **find this approach totally unjustified**. **I don't know the details of your situation (nor do I wish to find out) but am confident that you, as a teacher at Saint Columba's Nursery, have our children's safety and best interest at heart- just as you do your own child.** For this reason, **I am saddened that you and your family's name and reputation have been tarnished, your personal affairs publicized,**

11

and that your son was taken out of the school as a result of this incident but hope that the "storm" will soon pass...I wish to extend my humblest apologies to you and your family on behalf of those of us who see this as a **huge injustice and hope that you can find it in your heart to forgive those who believed it to be the right decision**.

(emphasis added).

40. On October 31, 2007, Mrs. Parnigoni received a copy of a letter from a parent of a School student that was sent to the Rector.  The parent wrote, in part:

I am deeply troubled by the letter that was sent to St. Columba Parishioners and Nursery School Parents on October 18, 2007...I have not had the privilege of ever having met Mrs. Parnigoni but trust that she is equally trustworthy as our son's teachers and would ensure the safety of our children from her husband (if even warranted) or anyone else.

**I assume that Mrs. Parnigoni disclosed her husband's conviction in 2004 and that appropriate measures from the parish wardens and school were taken at the time.  In your letter, there was no disclosure of any other incident from Mr. Parnigoni since then, so I am puzzled as to why it is necessary to name him three years later?**  I know very little of Mr. Parnigoni or the circumstances for his conviction but am in full agreement with you that the safety of our children is of utmost importance.  What troubles me, Reverend, is at what cost?  Does compassion and forgiveness take a back seat when we think that there could be potential harm?...**I am deeply disappointed that you and the Parish wardens feel comfortable with pointing fingers and naming everyone who has done a past wrong and turn their lives and that of their families; upside down in one fell swoop**.  What's next?
…
I, along with many others, have decided not to participate at the November 1st meeting **because we feel that the Parnigoni's personal affairs have already received far too much attention.**
…
I do appreciate the difficulties in gauging the balance between the right to know and respecting an individuals privacy by having faith in them.  **The damage to Mrs. Parnigoni [and] her family…has already been done.**

(emphasis added).

41. On or about November 9, 2007, Director Julia Berry sent another letter (the "November 9, 2007 letter") to the parents of students who attended the nursery school

and upon information and belief, the entire parish as well.  In the letter, which was sent to

thousands of households in the area, Ms. Berry only reinforced her prior statement that

Mrs. Parnigoni was a potential threat to the School's children.  She wrote, in part,

> I want to thank each of you who took time this past month to stop by, send
> a note, or make a phone call in response to the recent letter and polices
> that were sent out informing the community about security changes being
> put in place at St. Columba's.  Your words and letters of support for the
> school and Mrs. Parnigoni and your thoughtful questions about these
> changes were uplifting and reassuring to us **as we wrestled with the
> uncomfortable knowledge that the world can be a less-than safe place
> for our children.**

(emphasis added).

Ms. Berry continued the letter by thanking everyone who attended the November

1, 2007 "special meeting" and to inform recipients of two follow up events: "The

first…on November 15—will focus on a variety of **child safety issues** as well as

how to talk to children about them in an age-appropriate way…Then on Sunday,

November 18 there will be a showing of the video, Safeguarding God's Children

for Parents…"

42.  There has never been a single instance or circumstance that would suggest that

Mr. Parnigoni endangered or posed a threat to any student of the School or a member of

St. Columba's parish.  There has never been a single instance or circumstance that would

suggest that Mrs. Parnigoni, because of her marriage to Mr. Parnigoni or for any other

reason, endangered or posed a threat to any student of the School or member of St.

Columba's parish.

43.  Mrs. Parnigoni was terminated for the 2008-2009 school year.  In response to

questions from a parent regarding why Mrs. Parnigoni's contract was not renewed,

Defendant Berry stated that it was because of the disclosures contained in the October 18,

2007 letter and because current parents allegedly wanted to withdraw from Mrs. Parnigoni's class and prospective students did not want to be in her class next year.

44. During the summer months, Mrs. Parnigoni runs a summer camp for three-to-six year old children called the Teddy Bear Camp. The camp is held on the grounds of another church in the area. Mrs. Parnigoni has been involved with this camp since the summer of 2000. Some of the students at the School attend Mrs. Parnigoni's Teddy Bear Camp during the summer.

45. Upon information and belief, the Defendants were displeased that Mrs. Parnigoni ran this summer camp and that students from their School attended the camp. On or about February 28, 2008, after the events described above transpired, Ms. Berry expressed her displeasure by issuing Mrs. Parnigoni an unwarranted letter of reprimand because Mrs. Parnigoni sent parents a flyer about the Teddy Bear Camp, as she had done with Ms. Berry's knowledge (and with no consequences) in the past.

46. Mrs. Parnigoni made every reasonable effort to prevent the disclosure complained of herein. She removed her son from the school, offered her resignation and tried to negotiate with the Director and Rector on several occasions. She was compliant with all of their requests and in no way insubordinate. Yet, despite all these efforts, the decision to go ahead with the full public disclosure was made.

## COUNT I: DEFAMATION
## AGAINST ALL DEFENDANTS

47. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs as if set out in full.

48. Defendants October 18, 2007 and November 9, 2007 letters raised a defamatory inference that Plaintiff Fiona Parnigoni was a danger to children, a threat to

their safety and well being, and that parents should take action to ensure that their children did not become victims of sexual abuse.  Likewise, the letters raised a defamatory inference that Andrew Parnigoni, by virtue of his presence, posed a threat to the safety and well-being of students and that parents needed to take action to ensure that their children did not become victims of sexual abuse.

49. The Defendants endorsed, or intended to endorse, the defamatory inferences as demonstrated by the manner and language they used to convey the facts in the October 18, 2007 and November 9, 2007 letters.

50. Defendant Vincent's and Berry's statements that the disclosures were justified regardless of whether Andrew Parnigoni attended the school and even if Mrs. Parnigoni resigned, because of "Fiona's poor choice," coupled with the decision not to renew her employment contract, establish that Defendants' intended the defamatory inferences and were motivated by actual malice.

51. That the language used in the defamatory communications is reasonably capable of a defamatory interpretation is evidenced by the letter responses from recipients of the October 18, 2007 and November 9, 2007 letters, in which the authors expressed their outrage as to the defamatory implications contained in the letters.

52. Statements made in the October 18, 2007 and November 9, 2007 letters conveyed a defamatory meaning and lowered Mrs. Parnigoni in the estimation of the several thousand recipients of the letters.  The defamatory statements contained in these published communications injured Mrs. Parnigoni in her profession as a nursery school teacher and injured her standing in the community.

53. The statements made in the October 18, 2007 and November 9, 2007 letters conveyed a defamatory meaning and lowered Andrew Parnigoni in the estimation of the several thousand recipients of the letters.  The Defendants' allegations that Andrew posed a danger to his fellow students because of his association with his father, will now follow, mark and stigmatize this child for his entire school career.

54. The October 18, 2007 and November 9, 2007 letters, sent to over 3,500 households in the D.C. area, were disseminated in order to harm Mrs. Parnigoni's and her son's reputation.

55. There was no legitimate basis for the Defendants to send the October 18, 2007 and November 9, 2007 letters to the School's student's parents, let alone the entire parish.

56. At no time did either Andrew or Fiona Parnigoni consent to the defamation at issue here.  To the contrary, Ms. Parnigoni took every conceivable step to avoid the dissemination of the defamatory communications including withdrawing her son from the School and offering to resign.  Defendants refused these gestures because they were determined to disseminate the defamatory statements regardless of Mrs. Parnigoni's efforts.  The defamatory inferences of their statements were made with knowledge of their falsity and/or with reckless disregard for the truth.

57. The Church and School's decision to make a full and widespread disclosure, coupled with the Director and Rector's statements regarding Mrs. Parnigoni's "poor choice" for a husband establishes an actual malice state of mind.

58. By reason of Defendants defamatory statements, Plaintiffs suffered damages and injury, mental anguish, distress, and humiliation and economic loss. WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages in the amount

of THREE MILLION DOLLARS ($3,000,000.00) for each of them, for a total of SIX

MILLION DOLLARS ($6,000,000.00).

59. Defendants conduct in disseminating the defamatory statements showed

maliciousness, spite, ill will, vengeance and a deliberate intent to harm Plaintiffs Fiona

and Andrew Parnigoni.  Accordingly, Plaintiffs are entitled to and demand punitive

damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

60.

## COUNT II: INVASION OF PRIVACY- FALSE LIGHT
## AGAINST ALL DEFENDANTS

61. Plaintiffs reallege and incorporate herein by reference each and every

allegation contained in the preceding paragraphs as if set out in full.

62. Defendants' conduct of sending the October 18, 2007 and November 9, 2007

letters to parents of nursery school students and the entire parish constitutes publicity.

63. These letters contained statements that placed Plaintiffs Andrew and Fiona

Parnigoni in a false light, specifically that Plaintiffs Andrew and Fiona Parnigoni were

dangerous to children, a threat to their safety and well being, and that parents should take

action to ensure that their children did not become victims of sexual abuse.

64. Defendants knew that neither Andrew nor Fiona Parnigoni was a danger or

threat to children and that no action was necessary to ensure that students of the school

did not become victims of sexual abuse while in Fiona's care or Andrew's presence.

65. Defendants improperly publicized facts about Andrew and Fiona Parnigoni

that placed them in a false light by attributing to them conduct and characteristics that

were false.  These statements were directed to and concerned Andrew and Fiona

Parnigoni and were highly offensive to a reasonable person as demonstrated, in part, by

the letter responses from recipients of the October 18, 2007 and November 9, 2007 letters.

66. By reason of Defendants placing Plaintiffs Andrew and Fiona Parnigoni in a false light, Plaintiffs Andrew and Fiona Parnigoni suffered damages and injury, mental anguish, distress, and humiliation and economic loss. WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages in the amount of THREE MILLION DOLLARS ($3,000,000.00) each, for a total of SIX MILLION DOLLARS ($6,000,000.00).

67. Defendants' conduct in placing Plaintiffs Fiona and Andrew Parnigoni in a false light showed maliciousness, spite, ill will, vengeance and a deliberate intent to harm Plaintiffs. Accordingly, Plaintiffs are entitled to and demand punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

**COUNT III: INVASION OF PRIVACY-
PUBLIC DISCLOSURE OF PRIVATE FACTS
<u>AGAINST ALL DEFENDANTS</u>**

68. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs as if set out in full.

69. The October 18, 2007 letter contained private facts regarding Andrew Parnigoni and Mr. and Mrs. Parnigoni's personal and private decision to withdraw their son from the School in an effort to avert the disclosure that Andrew's father (and Mrs. Parnigoni's husband) was a convicted sex offender, as well as the defamatory inferences detailed above.

70. Defendants improperly publicized facts about Plaintiffs that were not of valid concern to the public, i.e., the fact that they withdrew Andrew Parnigoni from the School because of Defendants unwarranted concerns as detailed above.

71. The publication of these facts was highly offensive to any reasonable person and constitutes unreasonable publicity given to Plaintiffs' private life.

72. By reason of Defendants conduct, Plaintiffs have suffered damages.

73. WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in the amount of THREE MILLION DOLLARS ($3,000,000.00) each, for a total of NINE MILLION DOLLARS ($9,000,000.00).

74. Defendants conduct of improperly publicizing facts about Plaintiffs showed maliciousness, spite, ill will, vengeance and a deliberate intent to harm Plaintiffs. Accordingly, Plaintiffs are entitled to and demand punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

### COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

75. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs as if set out in full.

76. Defendants conduct of disseminating the October 18, 2007 and November 9, 2007 letters containing the defamatory inferences referenced above to over 3,500 households in the D.C. area including every parent of every student of the School and every member of the Church's parish constitutes extreme and outrageous conduct on the part of the Defendants.

77. Defendants' extreme and outrageous conduct was committed recklessly or intentionally as demonstrated by the Rector and Director's statements that evidence an

intent to punish Plaintiff Fiona Parnigoni for her "poor choices" and Andrew Parnigoni for the mere fact of who is father is. Moreover, Defendants decision to make the dissemination of the defamatory communications in light of Mrs. Parnigoni's efforts to assuage their concerns including walking her son a block away from the school, withdrawing him from the School, and offering to resign from her position, establishes Defendants' willfulness and/or recklessness.

78. As a result of Defendants' extreme and outrageous conduct, Plaintiffs Andrew, David and Fiona Parnigoni have suffered severe emotional distress, embarrassment and humiliation.

79. WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages in the amount of THREE MILLION DOLLARS ($3,000,000.00) for each of them, totaling NINE MILLION DOLLARS ($9,000,000.00).

80. Defendants' conduct was motivated by maliciousness, spite, ill will, vengeance and a deliberate intent to harm Plaintiffs. Accordingly, Plaintiffs are entitled to and demand punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

### COUNT V: PROMISSORY ESTOPPEL
### AGAINST ALL DEFENDANTS

81. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs as if set out in full.

82. Mrs. Parnigoni is an experienced preschool teacher whose skills are in demand in the Washington, D.C. metropolitan area. Mrs. Parnigoni, with her reputation and experience, had a reasonable likelihood or probability that she would have obtained employment at another area school.

20

83. On or around October 18, 2007, Defendant Berry met with Mrs. Parnigoni and informed her that the Board would renew her contract for the next year and that her teaching position with the school was safe and that she need not worry as the "storm would soon pass."

84. Defendant Berry, acting on behalf of Mrs. Parnigoni's employer, the School, made a promise that Mrs. Parnigoni's contract would continue for the following year. It was reasonably foreseeable that Mrs. Parnigoni would rely on this promise and not seek employment elsewhere. Mrs. Parnigoni relied on this promise to her detriment as the School did not renew her contract as promised for the following academic year. Defendants had no intention to fulfill their promise to Mrs. Parnigoni.

85. Plaintiff Fiona Parnigoni suffered injury as a result of Defendant's conduct.

86. WHEREFORE, Mrs. Parnigoni demands damages to make her whole as well as such other and further relief as the Court may deem just and proper.

## COUNT VI: LOSS OF CONSORTIUM (DAVID PARNIGONI) AGAINST ALL DEFENDANTS

87. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs as if set out in full.

88. At all times relevant to this action, Fiona and David Parnigoni were and are lawfully married.

89. Due to Defendants tortious conduct, Fiona Parnigoni has suffered severe emotional distress. As a result, David has lost the consortium of his wife including marital services, affection, companionship between man and wife as well as other aspects shared between husband and wife.

90. Plaintiff David Parnigoni has suffered an actual loss of services or affection based on Defendants tortious conduct.

91. WHEREFORE, Plaintiff David Parnigoni demands judgment against Defendants for compensatory damages in the amount of THREE MILLION DOLLARS ($3,000,000.00).

92. Defendants conduct was motivated by maliciousness, spite, ill will, vengeance and a deliberate intent to harm Plaintiffs.  Accordingly, Plaintiff is entitled to and demands punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

### COUNT VII: LOSS OF CONSORTIUM (ANDREW PARNIGONI) AGAINST ALL DEFENDANTS

93. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs as if set out in full.

94. At all times relevant to this action, Andrew Parnigoni was the minor son of Fiona and David Parnigoni.

95. Due to Defendants tortious conduct, Fiona Parnigoni has suffered severe emotional distress.  As a result, Andrew has lost the consortium of his mother, including parental services, affection, and companionship.

96. Plaintiff Andrew Parnigoni has suffered an actual loss of services or affection based on Defendants tortious conduct.

97. WHEREFORE, Plaintiff Andrew Parnigoni demands judgment against Defendants for compensatory damages in the amount of THREE MILLION DOLLARS ($3,000,000.00).

98. Defendants conduct was motivated by maliciousness, spite, ill will, vengeance and a deliberate intent to harm Plaintiffs.  Accordingly, Plaintiff Andrew Parnigoni is entitled to and demands punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## COUNT VIII: LOSS OF CONSORTIUM (FIONA AND DAVID PARNIGONI)
## AGAINST ALL DEFENDANTS

99. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs as if set out in full.

100.    At all times relevant to this action, Andrew Parnigoni was the son of Fiona and David Parnigoni.

101.    Due to Defendants' tortious conduct, Andrew Parnigoni has suffered severe emotional distress due, in part, to having been forced to withdraw as a student of the School.  As a result, Fiona and David Parnigoni have lost the consortium of their son, including filial affection, and companionship.

102.    Plaintiffs David and Fiona Parnigoni have suffered an actual loss of affection based on Defendants tortious conduct.

103.    WHEREFORE, Plaintiffs Andrew and Fiona Parnigoni demand judgment against Defendants for compensatory damages in the amount of THREE MILLION DOLLARS ($3,000,000.00) for each, for a total of SIX MILLION DOLLARS ($6,000,000.00).

104.    Defendants' conduct was motivated by maliciousness, spite, ill will, vengeance and a deliberate intent to harm Plaintiffs.  Accordingly, Plaintiffs David and

Fiona Parnigoni are entitled to and demand punitive damages in the amount of TEN

MILLION DOLLARS ($10,000,000.00).

### COUNT IX: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### AGAINST ALL DEFENDANTS

105.    Plaintiffs reallege and incorporate herein by reference each and every

allegation contained in the preceding paragraphs as if set out in full.

106.    As discussed above, Plaintiff Fiona Parnigoni runs a preschool camp

called the Teddy Bear Camp in which students from the area, including students who

attend St. Columba's Nursery School, attend during the summer months.

107.    Defendants were at all time aware that Mrs. Parnigoni was involved in

running the Teddy Bear Camp and that some of their students were attendees and that

some students were repeat attendees.

108.    The dissemination of the defamatory letters detailed above induced or

caused a breach or termination of students' enrollment in the Teddy Bear Camp.

Defendants' conduct in disseminating the defamatory communications was purposefully

and intentionally designed to interfere with these existing and expectant business

relationships.

109.    As a result of Defendants' conduct, Mrs. Parnigoni suffered damages in

the form of loss of income and benefits, and extreme emotional pain and suffering.

110.    WHEREFORE, Plaintiff Fiona Parnigoni demands judgment against

Defendants for her economic damages (to be determined at trial) and compensatory

damages in the amount of THREE MILLION DOLLARS ($3,000,000.00).

111.    Defendants' conduct was motivated by maliciousness, spite, ill will, vengeance and a deliberate intent to harm Plaintiffs.  Accordingly, Plaintiffs are entitled to and demand punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

**COUNT X: NEGLIGENT MISREPRESENTATION**
**AGAINST ALL DEFENDANTS**

112.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs as if set out in full.

113.    Defendants admitted Andrew Parnigoni to St. Columba's Nursery School. At no time did Defendants inform Plaintiffs that if Andrew enrolled in the School, the disclosures detailed above would be made.  Defendants had an affirmative duty to disclose this fact.

114.    That the disclosures detailed above would be made if Andrew enrolled in the School involved a material issue.

115.    Plaintiffs relied upon the Defendant's omission to their detriment.

116.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages in the amount of THREE MILLION DOLLARS ($3,000,000.00) for each of them, for a total of NINE MILLION DOLLARS ($9,000,000.00).

117.    Defendants conduct in omitting this material fact showed maliciousness, spite, ill will, vengeance and a deliberate intent to harm Plaintiffs.  Accordingly, Plaintiffs are entitled to and demand punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants for

compensatory damages in the amount of THREE MILLION DOLLARS ($3,000,000.00)

for each of them, for a total of NINE MILLION DOLLARS ($9,000,000.00) and punitive

damages in the amount of TEN MILLION DOLLARS ($10,000,000) as well as all costs

and reasonable attorneys' fees as permitted by law and such other and further relief as the

Court may deem just and proper.

## Jury Demand

Plaintiffs request a TRIAL BY JURY.

Respectfully Submitted,

_____
Sundeep Hora (D.C. Bar. No. 472944)
ALDERMAN, DEVORSETZ & HORA PLLC
1025 Connecticut Ave., NW
Suite 615
Washington, D.C. 20036
Tel. 202.969.8220
Fax 202.969.8224
E-mail: shora@adhlawfirm.com

**COUNSEL FOR PLAINTIFFS**