**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FIONA PARNIGONI, DAVID PARNIGONI, and ANDREW PARNIGONI, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ST. COLUMBA'S NURSERY SCHOOL, ST. COLUMBA'S EPISCOPAL CHURCH, VESTRY OF ST. COLUMBA'S PARISH, REV. JANET VINCENT, and JULIA H. BERRY, | ) ) ) ) ) | 1:08-cv-00613 (RBW) |
| Defendants. | ) ) ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

David W. DeBruin (D.C. Bar No. 337626)
Luke C. Platzer (D.C. Bar No. 501274)
JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
(202) 639-6015 (tel)
(202) 637-6375 (fax)

*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................3

I.    THE LETTERS CANNOT REASONABLY BE READ TO "IMPLY" THAT
      FIONA OR ANDREW PARNIGONI ARE PEDOPHILES (COUNT I). ....................4

      A.    Plaintiffs' Interpretations Of The Letters Are Too Unreasonable To
            Credit. ............................................................................................................ 4

      B.    The Reasons The Letter Provides For The Disclosure Are Opinions
            Based On Disclosed Facts And Are Not Actionable. ..................................... 10

II.   THE PRIVACY TORTS ARE GOVERNED BY VIRGINIA LAW AND
      MERITLESS IN ANY EVENT (COUNTS II AND III). ...............................................12

      A.    Any Injuries Under The Privacy Counts Were In Virginia And
            Implicate Virginia's Express Statutory Policy Barring Suits On Such
            Theories. ....................................................................................................... 12

      B.    In Any Event, Plaintiffs' "False Light" Claim Rests On The Same
            Unreasonable Reading Of The Letters As Their Defamation Claim
            And Fails For The Same Reasons. ................................................................. 15

      C.    Every Element Of 'Publication of Private Facts' Is Foreclosed By The
            Allegations In The Amended Complaint. ....................................................... 16

III.  NOTHING ALLEGED IN THE COMPLAINT IS SUFFICIENT TO
      AMOUNT TO INTENTIONAL INFLICTION OF EMOTIONAL
      DISTRESS (COUNT IV). .............................................................................................18

IV.   PLAINTIFF FIONA PARNIGONI CANNOT USE PROMISSORY
      ESTOPPEL TO CIRCUMVENT HER EMPLOYMENT CONTRACT
      (COUNT V). ..................................................................................................................19

V.    THE DERIVATIVE "LOSS OF CONSORTIUM" CLAIMS ARE IN
      WHOLE OR IN PART NOT RECOGNIZED (COUNTS VI, VII, AND VIII)........21

VI.   THE INTERFERENCE WITH ECONOMIC RELATIONS CLAIM IS
      DERIVATIVE OF THE DEFAMATION COUNT AND FAILS FOR THE
      SAME REASONS (COUNT IX). ..................................................................................23

VII.  THE COMPLAINT ALLEGES NEITHER A MISREPRESENTATION OF
      DEFENDANTS' INTENT TO DISCLOSE MR. PARNIGONI'S STATUS
      NOR A DUTY TO NOTIFY PLAINTIFFS OF ANY SUCH INTENT
      (COUNT X). ..................................................................................................................23

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                     **PAGE(S)**

*Aldridge v. Secretary, Department of the Air Force*, Civ. A. No. 7:05-cv-00056-R, 2005 U.S. Dist. LEXIS 24598 (N.D. Tex. Oct. 24, 2005) ...............................................17

*Benz v. Washington Newspaper Publishing Co., LLC*, Civ. A. No. 05-1760, 2006 U.S. Dist. LEXIS 71827 (D.D.C. Sept. 29, 2006) .......................................................17

*Bernstein v. Fernandez*, 649 A.2d 1064 (D.C. 1991) ...................................................18

*Bernstein v. National Broadcasting Co.*, 129 F. Supp. 817 (D.D.C. 1955), *aff'd*, 232 F.2d 369 (D.C. Cir. 1956) ......................................................................................14

*Black v. District of Columbia*, 480 F. Supp. 2d 136 (D.D.C. 2007) .............................19

*Choate v. TRW, Inc.*, 14 F.3d 74 (D.C. Cir. 1994)................................................20, 21

*\*Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61 (D.D.C. 2005).........................20, 21

*Dale v. Thomason*, 962 F. Supp. 181 (D.D.C. 1997)....................................................18

*Dowd v. Calabrese*, 589 F. Supp. 1206 (D.D.C. 1984) ...............................................14

*Gharib v. Wolf*, 518 F. Supp. 2d 50 (D.D.C. 2007) .....................................................19

*Harris ex rel. Harris v. Easton Publishing Co.*, 483 A.2d 1377 (Pa. Super. Ct. 1984)................16

*Herbert v. District of Columbia*, 808 A.2d 776 (D.C. 2002)........................................22

*In re U.S. Office Products Co. Securities Litigation*, 251 F. Supp. 2d 58 (D.D.C. 2003) ............21

*Inland Mediation Board v. City of Panama*, 158 F. Supp. 2d 1120 (C.D. Cal. 2001)..................19

*\*Klayman v. Segal*, 783 A.2d 607 (D.C. 2001) ......................................................8, 15

*Lightfoot v. District of Columbia*, Civ. A. No. 04-1280, 2006 U.S. Dist. LEXIS 1358 (D.D.C. Jan. 10, 2006) ..............................................................................18

*Mamo v. District of Columbia*, 934 A.2d 376 (D.C. 2007), *cert. denied*, 128 S. Ct. 1670 (2008)..........................................................................................21

*Molecular Technology Corp. v. Valentine*, 925 F.2d 910 (6th Cir. 1991) ...................23

*Morris v. Runyon*, 870 F. Supp. 362 (D.D.C. 1994)....................................................21

*Parker v. Martin*, 905 A.2d 756 (D.C. 2006) ..............................................................22

*Parnigoni v. District of Columbia*, 933 A.2d 823 (D.C. 2007) .................................................7, 25

*\*Pearce v. E.F. Hutton Group, Inc.*, 664 F. Supp. 1490 (D.D.C. 1987) .........................13, 14, 22

*Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677 (Tex. App. 2001) .......................................19

*Raymen v. United Senior Ass'n*, 409 F. Supp. 2d 15 (D.D.C. 2006) ............................................19

*Ruf v. American Broadcasting Co.*, Civ. A. No. 97-1427, 1999 U.S. Dist. LEXIS 1092
    (D.D.C. Jan. 29, 1999) ...........................................................................................................17

*Smith v. Hope Village, Inc.*, 481 F. Supp. 2d 172 (D.D.C. 2007)................................................24

*Stern v. Great Western Bank*, 959 F. Supp. 478 (N.D. Ill. 1997) ..........................................17, 18

*\*Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) ........................................................5, 10, 12

*Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006) .....................................................................4, 16

*Ulliman Schutte Construction, LLC v. Emerson Process Power Management & Water
    Solutions*, No. Civ. A. 02-1987, 2006 WL 1102838 (D.D.C. Mar. 31, 2006).......................21

*Vassiliades v. Garfinckel's*, 492 A.2d 580 (D.C. 1985) ............................................................17

*\*Weyrich v. New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001) ...................................8, 9, 11, 15

*\*White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990) .............................4, 5, 9, 14

*Wolf v. Regardie*, 553 A.2d 1213 (D.C. 1989) ...........................................................................17

## RESTATEMENTS

*Restatement (Second) Conflict of Laws* (1971)......................................................................12, 14

*Restatement (Second) of Torts* (1977)..............................................................................9, 23, 24

## INTRODUCTION

This case is about the fact that, following David Parnigoni's criminal conviction for playing "strip ping pong" with an 11-year old boy, Defendants (an Episcopal church and its rector, along with as its nursery school and director) published the truthful fact of his conviction to its parish and school community.   Mr. Parnigoni was married to a teacher in the nursery school and had recently come even closer to the community as the father of a student, and members of the parish thus could or might already have had – through the Church – social or other contact with the Parnigoni family and thus with him.  It is a sad reality today that churches, schools, camps, and other institutions must be vigilant to ensure that children in their community are not abused.   Apart from the moral imperative of protecting children, there are enormous potential legal consequences if abuse occurs and the institution has failed to act.  In this case, it is "not in dispute," Opposition to Motion to Dismiss ("Opp.") at 2, that David Parnigoni is "a convicted sex offender," *id.*,[1] whom the Commonwealth of Virginia requires to register because it has determined that people in his circumstances may continue to pose a danger to children. Defendants knew this and notified families who might have otherwise assumed they could trust Mr. Parnigoni around their children, should they or their children come into contact with him, because their connection to him was through their church.

The Opposition, however, reflects a total incomprehension of this reality, as it does of the significance of Mr. Parnignoi's conviction *and registration*.  At least three times the Opposition notes that his conviction occurred three years ago – e.g., "there is no justification for [the

---

[1] Opp. at 2.  So says the Opposition, and correctly.  But at the time the Defendants were called upon to act in October 2007, Plaintiffs' then-counsel was telling the church and school community that David Parnigoni's conduct "involved no allegation of sexual contact or conduct," that the incident which resulted in his conviction was merely an "immature prank," that "the juvenile behavior at issue was not criminal," and that "[t]here has never been an allegation or belief by anyone that Mr. Parnigoni is in any way a risk to anyone," *see* Opening Mem. at 7, although he was then a registered sex offender.

Church's] decision, over three years later, to disseminate the disclosures at issue." Opp. at 2; *see also id.* at 20, 23. But while the conviction occurred three years before the letter, his registration as a sex offender in the Virginia Sex Offender and Crimes Against Minors Registry was current when the Church made its disclosure, is current now, and will be current next year and beyond, because Virginia has determined that persons in his circumstances remain a continuing threat.

The Opposition's failure to come to terms with the fact of Mr. Parnigoni's registration emerges in its recitation of the "Factual Background." The Opposition says that "Mrs. Parnigoni enrolled her three-year-old son, Andrew Parnigoni, in the School" and that "David Parnigoni is in no way affiliated with the school or parish at St. Columba's." Opp. a 2-3. But, of course, *both* Mr. and Mrs. Parnigoni enrolled their son in the school, and Mr. Parnigoni *was* affiliated with it, because he was the spouse of a teacher and had been a parent of a recent student. Only by ignoring his current registration as a sex offender and denying his status as a parent of a student can the Opposition claim that "there was no basis to make the defamatory disclosures to [the] entire parish let alone each and every parent of a student who attended the nursery school." Opp. at 2. Once Mr. Parnigoni had joined the school community as a parent, the prospect arose that other parents might entrust their child to his temporary care – for a play date, a birthday party, or a ride home from the park. Those parents were entitled to make an informed choice, knowing, as did Defendants, that Mr. Parnigoni was, then and now, a registered sex offender.

To Plaintiffs' credit, they realize that what this case is about – the Church's judgment call truthfully to caution parents about Mr. Parnigoni – is not actionable. To their discredit, they try to evade this inevitable conclusion with a series of increasingly implausible legal theories bearing no resemblance to what the Church actually said in its letters. With all due respect, this lawsuit against the Church, and the claims that the Church's truthful disclosure about Mr.

Parnigoni had a "defamatory implication" concerning Fiona Parnigoni or her 3-year old son, is frivolous. Based on the face of the disclosures at issue, this case should be dismissed.

## ARGUMENT

Plaintiffs' Opposition is a graphic illustration of legal overreaching. The core of Plaintiffs' argument rests on a single proposition: that a reasonable person reading the two challenged letters would think that St. Columba's was communicating that a teacher at its own school was "a dangerous person who could harm the children in her care," Opp. at 16, a "potential pedophile," *id*. at 14, was "guilty of actual or potential wrongdoing," *id*. at 23, and had the "potential to be a sex offender," *id*. − all while the continuing to employ and entrust children to her and thanking those who sent "words and letters of support" for her.[2] Indeed, their argument depends on the further leap that a reasonable reader would also think that the Church was accusing a three-year-old toddler of posing some ill-defined, sexual "threat" and "danger" to other children. *Id*. at 16, 24. Plaintiffs suggest the Church sent a subtly coded message designed to defame Fiona and Andrew Parnigoni personally as threats to children attending the School. The letters refute that tortured reading. The letters are about *David* Parnigoni, and they contain no defamatory implication about Fiona or Andrew Parnigoni. Their defamation claims require a *reasonable* defamatory meaning *about them*, and there is none here.

Plaintiffs overreach further by hitching countless tag-along claims to this futile defamation count, hoping that perhaps one will survive the pleading stage. The privacy and consortium claims assert injuries done to Plaintiffs, Virginia residents, in Virginia, which does not extend to its citizens the protections they claim (a problem Plaintiffs miscomprehend, mistakenly proceeding as though choice of law were decided in the aggregate for the "case"

---

[2] *See* Defendants' Memorandum of Law in Support of Motion to Dismiss ("Opening Mem.") Ex. B.

instead of separately for each claim). The others are either variations of Plaintiffs' legally insufficient defamation theory or rest on equally strained interpretations of the letters.

The Court is not required to accept as true Plaintiffs' unreasonable readings of the letters or misstatements of law. Plaintiffs repeatedly emphasize the procedural posture of this case, but "Rule 12(b)(6) dismissal is appropriate where the allegations contradict the claim asserted." *Trudeau v. FTC*, 456 F.3d 178, 193 n.31 (D.C. Cir. 2006) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). Plaintiffs repeatedly assert they should be allowed to take discovery to support their allegations, but a plaintiff is not entitled to subject a defendant to the burdens of discovery simply to gather support for factual allegations that would not warrant liability if proved. St. Columba's Episcopal Church, Rector Janet Vincent, and Nursery School Director Julia Berry should not have to remain exposed to a nineteen-million dollar lawsuit over the truthful disclosure they made to the church community regarding David Parnigoni's criminal conviction for a sexual offense involving a minor and his registration as a sex offender.

I.    **THE LETTERS CANNOT REASONABLY BE READ TO "IMPLY" THAT FIONA OR ANDREW PARNIGONI ARE PEDOPHILES (COUNT I).**

   A.    **Plaintiffs' Interpretations Of The Letters Are Too Unreasonable To Credit.**

Plaintiffs do not dispute that there is not a single false or defamatory statement about them in either letter. Their argument rests on the narrow libel theory set forth in *White v. Fraternal Order of Police*, 909 F.2d 512, 518-22 (D.C. Cir. 1990), which permits plaintiffs in limited cases to state a claim for defamation where defamatory facts about them are not stated overtly, but are implied. The plain words of the two letters foreclose recovery on this theory.

In *White* the defendants implied that the plaintiff had used drugs and then bribed officials to influence the drug testing results. The defendants wrote that the plaintiff (a police officer) first tested positive, then negative, but that (i) the positive result "should easily have been

confirmed" by the lab that double-checked the result, (ii) it was "highly unusual" for the lab's result not to confirm the results of the initial test, (iii) there was concern about "a systematic effort to subvert the integrity of the drug testing procedures . . . and to manipulate the procedures so that desired results can be maintained," and (iv) "[p]ossible statutory violations include 18 U.S.C. Section 201 (bribery); D.C. Code Sections 22-712 (bribery); 22-723 (tampering with physical evidence)." 909 F.2d at 515. The district court held that the letter could not be understood to directly accuse the plaintiff of using drugs and bribing the laboratory to falsify his test results, but the Court of Appeals reversed, holding that the accusations were implied. *Id*. at 521. In so holding, however, the Court cautioned against reliance on defamation by implication and warned that "courts must be vigilant not to allow an implied defamatory meaning to be manufactured from words *not reasonably capable of sustaining such meaning*." *Id*. at 519 (emphasis added); *see also Tavoulareas v. Piro*, 817 F.2d 762, 781 (D.C. Cir. 1987) (en banc) (rejecting "tortured attempt to discern some dark, hidden meaning . . . when the plain words of the [communications] explicitly rebut that meaning").

The church's letters here are nothing like those in *White*. As set forth in full in Defendants' opening memorandum, no reasonable person could read either letter as accusing Fiona Parnigoni or Andrew Parnigoni of wrongful conduct. *See* Defendants' Memorandum in Support of Motion to Dismiss ("Opening Mem.") at 13-15. What makes Plaintiffs' readings of the letters illogical and unreasonable is apparent from their two-step argument. Plaintiffs explain their reasoning twice in two pages:

> It is the juxtaposition of factual statements regarding Fiona Parnigoni's status as David Parnigoni's wife, with other non-factual statements regarding the Defendants' purported motive for why disclosure was necessary that creates the defamatory inference: that Fiona Parnigoni was a potential pedophile and posed a danger to children . . . .

> The matter in which the disclosure regarding David Parnigoni's criminal conviction for indecent exposure is juxtaposed with the assertion that steps have been taken to prevent him entering school grounds with the statement that notice is being provided so that parents can make "an informed decision as to whom [they] entrust the care and supervision of your child" leads to the only plausible defamatory inference that Fiona Parnigoni was a threat as well. *After all, whom else could the Church be referring to when it refers to "entrusting the care of your child?" David Parnigoni was certainly not in charge of caring for their children*.

Opp. at 14; *id*. at 15 (emphasis added).

First, according to Plaintiffs, it is the "juxtaposition" of Fiona's name and David's conviction that supposedly gives rise to an implication that she, too, is a threat. But there is no "juxtaposition," whatever argument Plaintiffs are trying to make. The letter merely identifies David as Mrs. Parnigoni's husband and Andrew's father – a reasonable thing to do, as "David" is a common name and members of the community logically might encounter him only as "David" or "Fiona's husband" or "Andrew's father" rather than as "David Parnigoni." By Plaintiffs' reasoning, there would be a defamatory implication about anyone who was mentioned in the same paragraph with Mr. Parnigoni. Had the church organist been his second cousin, and the letter read: "Mr. David Parnigoni, the cousin of our church organist, Sebastian Parnigoni, is registered with the Virginia Sex Offender and Crimes Against Minors Registry . . . ," Plaintiffs would be arguing that the "juxtaposition" of the two names implicates the organist as a pedophile. [3]

---

[3] Plaintiffs are *not* arguing that the letters were defamatory of Fiona and Andrew Parnigoni because they implied that David Parnigoni might pose a risk to children he met or came into contact with through them. Plaintiffs avoid this argument wisely. As explained in Defendants' opening memorandum, such an implication plainly (1) would not be "of and concerning" Fiona or Andrew, (2) would not be defamatory of Fiona of Andrew, and (3) would plainly be protected as an opinion based on disclosed facts (i.e., given the disclosed truthful fact of David's criminal conviction). Opening Mem. at 11, 18. Instead Plaintiffs' Opposition makes clear that their theory of defamatory meaning is that *Fiona or Andrew* might *themselves* harm children. *See* Opp. at 16 ("the only plausible conclusion is that Defendants desired to imply that *Fiona Parnigoni was a dangerous person who could harm the children in her care"*) (emphasis added);

Second, and more telling, Plaintiffs assert that the letter permits only one inference because, "[a]fter all, whom else could the Church be referring to when it refers to 'entrusting the care of your child?'  David Parnigoni was certainly not in charge of caring for their children." Opp. at 15.  But the rector's statement: "I am providing you this notice to enable you to make informed decisions as to whom you entrust the care and supervision of your child" immediately follows a statement *about him* – i.e., "I want to assure you that steps have been taken to prevent Mr. Parnigoni from entering St. Columba's grounds or participating in St. Columba's Nursery School events."  The meaning of the statement is plain: the church and school have taken what steps they can to keep Mr. Parnigoni away from your child; now it is up to you to decide, with knowledge of his status, whether you will entrust the care and supervision of your child to him in connection with a play date, birthday party or similar encounter outside school hours and off school property.  In answer to Plaintiffs' question, "whom else could the Church be referring to," the answer is that there is no reason to believe, or assume, that is referring to anyone other than Mr. Parnigoni.  Although Plaintiffs try to avoid the fact, he was a parent of a recent student in the nursery school, and defendants could reasonably anticipate that relationships had already been formed with other school families that might lead them to entrust their children to him, just as the parent of the Janney Elementary School student had done.[4]  Notwithstanding Plaintiffs' insistence that the procedural posture entitles them to have inferences drawn in their favor, "inferences cannot extend . . . statements, by innuendo, beyond what would be the ordinary and

---

*id.* ("defamatory implication here is that Andrew was removed from the school because *he* was a danger to his classmates") (emphasis added).

[4] *See Parnigoni v. District of Columbia*, 933 A.2d 823, 825 (D.C. 2007) (noting that Mr. Parnigoni had previously used his position at Janney Elementary to befriend the family of his victim, who "grew to trust him").

common acceptance of the statement." *Klayman v. Segal*, 783 A.2d 607, 616 (D.C. 2001) (quoting *Yeagle v. College Times*, 497 S.E.2d 135, 138 (Va. 1998)).

Plaintiffs also attack the statement that the church was providing the disclosure due to its "inability to anticipate every possible future scenario" as somehow implying that Andrew (a 3-year old toddler) might harm other children.  Opp. 16.  But this is the mark of how extreme Plaintiffs' position is.  No reasonable person could read the letter as suggesting that a 3-year old might sexually abuse other children.  A 3-year old may undress and even say "naughty" words, but he or she is incapable of sexual abuse, physically and mentally.

And Plaintiffs' argument that Ms. Berry's letter "attach[ed] Mrs. Parnigoni's name yet again to a thinly-veiled reference to pedophilia" by stating that the world could be "a less than safe place for our children," Opp. at 17, depends on selective quotation.  Of course, Ms. Berry's letter contains a "[not so] veiled reference" to pedophilia; she is referring to Mr. Parnigoni and the two other men identified as sex offenders or potential sex offenders in the rector's earlier letter − obviously not Mrs. Parnigoni, whose supporters Ms. Berry compliments and thanks in saying, "Your words and letters of support for . . . Mrs. Parnigoni and your thoughtful questions about these changes were uplifting and reassuring to us as we wrestled with the uncomfortable knowledge that the world can be a less-than safe place for our children."  Opening Mem. Ex. B. Moreover, the rector's earlier letter made clear that Mrs. Parnigoni had been a teacher at the school for six years and *remained* a teacher, negating any reasonable inference that the church considered her a "potential pedophile."  Compare Opp. at 14.

Plaintiffs' unreasonable reading of the letters cannot be salvaged by reference to the three letters of support written by other parents.  Opp. at 17-18.  First, "[w]hether a statement is capable of defamatory meaning is a question of law."  *Weyrich v. New Republic, Inc.*, 235 F.3d

617, 627 (D.C. Cir. 2001); Restatement (Second) Torts § 614 (1977).  Whether the statement is actually understood as such is a *separate* requirement.  *See White*, 909 F.2d at 519 ("the language must, as a matter of law, be reasonably capable of a defamatory meaning *and* a jury must find that the language was actually understood by the recipient in that sense.") (emphasis added).  Plaintiffs cannot relieve themselves of the burden of demonstrating a *reasonable* defamatory reading by pointing to a small number of sympathetic letters encouraging Mrs. Parnigoni.  "[T]he fact that a person . . . hearing words obviously intended to be innocent, by an unreasonable construction attaches to them a derogatory meaning, does not render the language defamatory."  Restatement (Second) of Torts § 563 cmt. c.

More importantly, Plaintiffs give the letters of support an unreasonable reading, for they do not reflect that the authors understood the Church to be saying that Mrs. Parnigoni presented any danger to children.  The one author discussed at length is merely disagreeing with the disclosure of Mr. Parnigoni's criminal conviction and expressing sympathy for Mrs. Parnigoni, given that she "ha[s] our children's best interests at heart."  Opp. at 17-18.  It is an unsupportable leap to go, as Plaintiffs do, from the letter's generalized expression of regret that "you and your family's name and reputation have been tarnished [and] your personal affairs publicized" to Plaintiffs' theory that the letter implies that Mrs. Parnigoni "was a dangerous person who could harm the children in her care."  Opp. at 19; *id*. at 16.  On its face, the letter expresses regret at the embarrassment to Mrs. Parnigoni from having her husband's criminal conviction publicized and having *her husband* portrayed as a potential risk to children; nothing in it reflects that the supporter understood the church's letter as suggesting that Mrs. Parnigoni was *herself* a risk to

children, as Plaintiffs allege.[5]  The same is true for the note of another parent (and police officer), who wrote that "I would be the first one to remove my child if I thought there as a danger," but did not perceive any danger after reading the rector's letter.  Opp. at 18 n.3.

### B.  The Reasons The Letter Provides For The Disclosure Are Opinions Based On Disclosed Facts And Are Not Actionable.

Plaintiffs' defamation claim fails for the additional reason that it is based entirely on the church's opinion as to *why* it felt it necessary to disclose Mr. Parnigoni's conviction:  parents should be "able to make informed decisions as to whom [they] entrust the care and supervision of [their] child"; it could not "anticipate every possible future scenario" in which David Parnigoni might have social contact with parishioners; it was the "best course of action to give parents the information they need," and parents were "entitled to information that may impact the safety of [their] children."  Opening Mem., Ex. A at 2-3.  These statements all opine on the significance of the facts concerning David Parnigoni and the obligation felt by Defendants, and they are paradigmatic opinions based on disclosed facts.  Opening Mem. at 16-18.[6]

Plaintiffs concede that opinions based on disclosed facts are not actionable.  Opp. at 21-22.  However, they argue that (1) whether the statements in the letters are facts or opinions cannot be resolved on a motion to dismiss, *id*. at 22; (2) any First Amendment protection would extend only to a single sentence in the church's letter, *id*. at  21; and (3) the letters "impl[y] the existence of undisclosed facts concerning Mrs. Parnigoni," namely her "potential to be a sex

---

[5] Moreover, even if this one letter somehow supported Plaintiffs' defamation theory, it would not establish that a reasonable person could read Ms. Berry's letter as suggesting that Fiona Parnigoni was a threat to children, or as suggesting that her 3-year old son was such a threat.

[6] Plaintiffs' allegations that these were not Defendants' actual motives, *see* Opp. at 20-21, is irrelevant to assessing how reasonable persons would read the letter.  *See Tavoularea*s, 817 F.2d at 781-82.

offender," *id.* at 22-23, and concerning Andrew, namely "the undisclosed fact that he is a danger to children," *id.* at 24.  Each response is meritless.

First, Plaintiffs are simply wrong with respect to the procedural posture of the case: Whether a statement "express[es] or impl[ies] a verifiably false fact" about the plaintiff is "a critical threshold question at the 12(b)(6) stage."  *Weyrich*, 235 F.3d at 624.

Second, the church's opinion that parents had a right to know the facts about Mr. Parnigoni, and that the church had a moral and legal obligation to inform them, is more than an isolated sentence in the final paragraph – it is the entire justification for the church's disclosure, repeated several different ways in the letter and encompassing *every* statement with which Plaintiffs appear to take issue.  *See* Opp. at 15-16.[7]

Third, Plaintiffs' suggestion that the church's letter implied "undisclosed facts" about Fiona and Andrew Parnigoni cannot be supported by what the letter says.  It *disclaims* withholding "undisclosed facts" from parents, expressly arguing that parents are "entitled to information that may impact the safety of [their] children."  Opening Mem., Ex. A at 3.  It is implausible enough to suggest that Defendants would withhold facts about Mrs. Parnigoni or Andrew Parnigoni suggesting that they might harm children; even more so to suggest that the Church was trying to "signal" the existence of such facts in a letter whose declared purpose was *full transparency* as to David Parnigoni, another named, registered sex offender living in a

---

[7] Particularly ironic is Plaintiffs' statement that the First Amendment protection would not extend to "the several other actionable statements contained in Reverend Vincent's letter," Opp. at 21 – statements that Plaintiffs fail to identify.  Despite the challenge to the sufficiency of the amended complaint presented by the motion to dismiss, Plaintiffs' still have not identified *which* specific statements they allege to be defamatory.  Defendants have been forced to cobble together Plaintiffs' theory of defamatory meaning from statements scattered throughout Plaintiffs' brief, and, for purposes of the motion to dismiss, from statements Plaintiffs made in legal correspondence outside the pleadings, because Plaintiffs' amended complaint is deficient in this respect.  *See* Opening Mem., Ex. C.

retirement facility used by the church, and a third man who had made inappropriate overtures to work with children in the parish. *See* Opening Mem. Ex. A. Although defamation can be "subtly implied as well as directly stated, that sensible proposition lacks force where, as here, the charge is direct and straightforward, trumpeted in the opening paragraph." *Tavouloreas*, 817 F.2d 762 at 781 n.21

As a last resort, Plaintiffs also argue, without explaining how a reasonable person would draw such a connection, that defamatory facts about Fiona and Andrew Parnigoni were implied from the mere fact that the notification was sent *at all*, given that three years had lapsed since David Parnigoni's conviction. Opp. at 23. But the notification in the rector's letter focuses on his registration with the Virginia Sex Offender and Crimes Against Minors Registry and the fact that that registration is current and continuing. It is his *present, continuing* status as a registered sex offender (as well as the registered status of the "sometime participant" in parish services also named in the letter) that explains the notification. The letter says nothing that invites speculation that, in the three years since Mr. Parnigoni's conviction, the Church had learned something alarming, which it was not describing, about Mrs. Parnigoni (or Andrew).[8] The mere *fact* of the disclosure and its timing, without more, implies nothing about Fiona or Andrew.

## II.    THE PRIVACY TORTS ARE GOVERNED BY VIRGINIA LAW AND MERITLESS IN ANY EVENT (COUNTS II AND III).

### A.    Any Injuries Under The Privacy Counts Were In Virginia And Implicate Virginia's Express Statutory Policy Barring Suits On Such Theories.

Choice of law is determined on a claim-by-claim basis, not in the aggregate. Restatement (Second) Conflict of Laws § 6 cmt. f. The Opposition ignores this basic principle entirely.

---

[8] Even putting aside the fact of Mr. Parnigoni's current registration, a reasonable reader, being notified of the 3-year old conviction, would conclude that the church had re-assessed the risk posed by Mr. Parnigoni because of the Andrew's recent enrollment; because of a felt need to give notice to new school families and parish members; or because the new rector's judgment of the matter simply differed from a decision made prior to her arrival.

Instead it blankly contends that District of Columbia law applies "to this case" because it has more contacts to the sum of the events alleged across their 10-count amended complaint. Opp. at 24-25, 26. And the Opposition ignores *Pearce v. E.F. Hutton Group, Inc.*, 664 F. Supp. 1490, 1494-95, 1503 n.19 (D.D.C. 1987), which is controlling. In that case, the court applied District law to a defamation claim but recognized that the law of the plaintiff's residence governed the invasion of privacy claim arising from the same publication.

Defendants have explained, in reliance on *Pearce*, why Plaintiffs' two privacy counts are governed by Virginia law: Virginia has a statutory policy barring suits on Plaintiffs' theories, and as it is the state where Plaintiffs reside and were injured, it is the only state whose policies are implicated by those claims. The purpose of both 'false light' and 'publication of private facts' torts is to protect the feelings of victims, not to punish the speaker. Although both the District of Columbia and Virginia have contacts to the alleged privacy invasion, the District's reasons for recognizing such torts, unlike Virginia's policy not to, are not implicated by the *nature* of its contacts. A policy of protecting victims of privacy invasions is not furthered by extending the protection to residents of another state allegedly injured by letters published from the District. Moreover, since the place of injury is the most important contact in privacy torts based on an interstate publication, and Plaintiffs are Virginia citizens who would have suffered any injury arising from the alleged privacy invasion in Virginia, Virginia is the jurisdiction with the most significant relationship to those claims. Opening Mem. at 18-21.

Plaintiffs' privacy claims cannot piggyback onto District of Columbia law simply because Plaintiffs also have pleaded separate counts centered here.[9] Each claim requires a

---

[9] District of Columbia law governs the promissory estoppel, negligent misrepresentation, and intentional interference with economic relations, claims, given the importance of the place of the conduct under the first two theories and the fact that the injury for the third took place in the

distinct choice-of-law analysis. The Opposition commits the very error cautioned against by *Bernstein v. National Broadcasting Co.*, 129 F. Supp. 817, 824-25 (D.D.C. 1955): "lumping of invasion of privacy with defamation leads to error in choice of law, since determination of the law applicable to an action for invasion of privacy by interstate publication must depend upon a consideration of the nature of the tort itself, which differs materially from slander or libel." *Aff'd*, 323 F.3d 369 (D.C. Cir. 1956).

Telling is the assertion that "the place 'where the injury occurred' . . . is in the District of Columbia" because that is "where the majority of the recipients who received the letters reside." Opp. at 26. This assertion (as well as Plaintiffs' reliance on *Dowd v. Calabrese*, 589 F. Supp. 1206 (D.D.C. 1984)), clearly confuses Plaintiffs' privacy claims with their defamation claims. Privacy torts protect feelings, not reputations. *See White*, 909 F.2d at 518 ("invasion of privacy . . . differs from an action for defamation because a defamation tort redresses damage to reputation while a . . . privacy tort redresses mental distress from having been exposed to public view"). Any "mental distress" Plaintiffs might have suffered would have been in Virginia where they reside, not the District. *See Pearce*, 664 F. Supp. at 1499; *cf. Restatement (Second) Conflict of Laws* § 153 cmt. d (1971).

---

District. *Cf. Restatement (Second) Conflict of Laws* § 148 (1971). Given the critical role played by the "place of the injury" in defamation cases, however, it would be premature to decide whether District of Columbia or Virginia law should apply to the defamation count, given that the amended complaint appears to allege injuries to Plaintiffs' reputations in both the District and Virginia, as well as Maryland. *Cf. Id.* § 150 cmt. e; Am. Complaint ¶ 54 (alleging injury in "D.C. area" generally). As Defendants explained in their opening brief, however, the choice of law is not material to the defamation count in terms of the issues presented on the motion to dismiss. *See* Opening Mem. at 10 n.7.

**B.    In Any Event, Plaintiffs' "False Light" Claim Rests On The Same Unreasonable Reading Of The Letters As Their Defamation Claim And Fails For The Same Reasons.**

In the alternative, even were the false light claim governed by District of Columbia law, it fails for the same reasons as the defamation claim.  False light protects against hurt feelings instead of harmed reputation, but it otherwise contains similar elements to defamation and is subject to the same defenses.  *See* Opening Mem. at 21-22.  Plaintiffs do not dispute that these claims rise or fall together, referring the Court to their defense of their defamation claim to support their false light claim.  Opp. at 28-29.  And their contention that "whether the letters place Plaintiffs in a false light . . . has no place in a motion brought pursuant to 12(b)(6)," Opp. at 28, is simply wrong.  *See*, *e.g.*, *Klayman v. Segal,* 783 A.2d 607, 619 (D.C. 2001) (affirming dismissal of complaint because challenged statement "as a matter of law" did not place Plaintiff in false light).  Because the 'false light' claim rests on the same unreasonable reading of the two letters as the defamation claim (i.e. "attributing conduct and characteristics to Andrew and Fiona Parnigoni" suggesting their involvement in pedophilia, Opp. at 29), and further because the statements upon which it rests are constitutionally protected as "opinions based on disclosed facts,"[10] this claim must be dismissed.  *See supra*, Part I.

---

[10] Plaintiffs misunderstand Defendants' further point that "false light" is identical to defamation with respect to the requirement that statements are not actionable unless they are "provable as false."  Opening Mem. at 28 (citing *Howard v. Antilla*, 294 F.3d 244, 249 (1st Cir. 2002)).  Defendants' point is not, as Plaintiffs assert, that Plaintiffs' claim should fail because it is not possible to prove that Fiona and Andrew are *not* "pedophiles."  *See* Opp. at 28.  It is rather that statements that are not susceptible of being proved false, such as *opinions* based on disclosed facts, cannot be the basis for a false light claim, any more than a defamation claim, because such statements are not factual by nature.  *See Weyrich*, 235 F.3d at 627-28 ("the same First Amendment protections apply" to a privacy claim).

**C.  Every Element Of 'Publication of Private Facts' Is Foreclosed By The Allegations In The Amended Complaint.**

Plaintiffs' second invasion of privacy theory – publication of private facts – fails almost every element of the claim even if Virginia law does not apply.  As a threshold matter, the fact *actually* revealed in the letter, Andrew's withdrawal from the school, was not private.  It was apparent to anyone involved with the school.  Plaintiffs' argument that it was still "private" because "whether a fact is private depends on whether the reader or recipient of the private fact had prior knowledge of that fact," Opp. at 30, is incorrect.  Newspapers every day publish facts that are known, but not known to all; that these facts are "news" to some does not render such facts "private."[11]  A Gallup poll would likely confirm that 75 percent of the public cannot name the Vice President of the United States; that does not make Dick Cheney's title a private fact.

Second, the claim that Defendants disclosed, or implied, Plaintiffs' private reasons for withdrawing Andrew from the nursery school is refuted by what the letter actually says.  The letter says only that Andrew is no longer a student at the school and that he was not asked to withdraw.  Opening Mem., Ex. A at 2.  It does not say why his parents chose to withdraw him, nor speculate about their reasons.[12]

Third, Plaintiffs cannot maintain a claim by arguing that "Defendant improperly publicized the fact that Andrew Parnigoni was withdrawn because of Defendants' concerns regarding the potential threat his presence at the school posed to other children."  Opp. at 29 (citing Amended Complaint at ¶ 70).  Plaintiffs have alleged that this was not, in fact, the reason

---

[11] Plaintiffs cite *Harris ex rel. Harris v. Easton Publishing Co.*, 483 A.2d 1377 (Pa. Super. Ct. 1984) for this proposition.  *Harris* merely restates the unremarkable proposition that a fact cannot be private if it is known to the recipient, and not Plaintiffs' inverse proposition that *not* being known to some recipients makes a fact "private."  *Id.* at 1384.

[12] Plaintiffs are not entitled to "inferences" contrary to what the letter (which is incorporated in their Amended Complaint) actually says.  "Rule 12(b)(6) dismissal is appropriate where the allegations contradict the claim asserted."  *Trudeau*, 456 F.3d at 193 n.31 (citation omitted).

they withdrew him.  *See* Am. Compl. ¶ 26 (alleging Mrs. Parnigoni withdrew Andrew from school to avert disclosure of David's conviction, not because Defendants expressed concern that Andrew might harm other children).  Moreover, the plain text of the letter explicitly disavows that this was the reason for his withdrawal.  Opening Mem. Ex. A at 2 ("We did not ask the Parnigonis to remove their son from the School.").  Because the "*sine qua non* of [the] claim is that the information revealed to the public is not only intimate and private *but also true*," *Benz v. Washington Newspaper Publishing Co., LLC*, No. 05-1776 (EGS), 2006 WL 2844896, at *7 (D.D.C. Sept. 29 2006) (dismissing public disclosure of private facts claim because plaintiff alleged that disclosed facts were untrue),[13] the Amended Complaint does not state a claim.

Finally, the Opposition attempts to avoid the question of whether the alleged facts could ever be considered "highly offensive to a reasonable person" by asserting that this determination must be made "exclusively" by a jury.[14]  Courts routinely decide the offensiveness of statements as a matter of law, including on motions to dismiss.[15]

---

[13] *See also Ruf v. Am .Broad. Co.*, Civ. No. 97-1427, 1999 U.S. Dist. LEXIS 1092, at *23-*24 (D.D.C. Jan. 29, 1999) ("The conduct allegedly subject to Defendant's public disclosure cannot be construed as 'fact,' even when taken in a light most favorable to the Plaintiffs, because the Complaint itself alleges that the conduct in question never happened.").

[14] *Vassiliades v. Garfinckel's*, 492 A.2d 580, 588 (D.C. 1985), where the D.C. Court of Appeals reversed a J.N.O.V. granted by the trial court after a jury had held a disclosure to be highly offensive, does not stand for the proposition that offensiveness cannot be determined as a matter of law.  The Court is fully entitled to make a "threshold determination of offensiveness." *Wolf v. Regardie*, 553 A.2d 1213, 1219 (D.C. 1989).

[15] *See, e.g., Aldridge v. Secretary, Department of the Air Force*, Civ. No. 7:05-CV-00056-R, 2005 U.S. Dist. LEXIS 24598 (N.D. Tex. Oct. 24, 2005) (granting defendant's Fed. R. Civ. P. 12(b)(6) motion to dismiss a related invasion of privacy claim because the alleged facts were not highly offensive); *Stern v. Great Western Bank*, 959 F. Supp. 478, 483 (N.D. Ill. 1997) (granting defendant's motion to dismiss because the information disclosed was not highly offensive to a reasonable person).

III.    **NOTHING ALLEGED IN THE COMPLAINT IS SUFFICIENT TO AMOUNT TO INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT IV).**

By no stretch have Plaintiffs alleged facts that meet the standard for "outrageousness." The Opposition replies that "outrageousness" is a jury question and that members of the parish were in fact outraged by the church's letters, Opp. at 33; that requiring them to plead facts to support the severity requirement would amount to an "artificially stringent pleading requirement[]," *id*. at 34; and that only the jury can decide whether a First Amendment defense is available, *id*. at 32.  All three responses miss the mark.

First, courts routinely dismiss complaints because no reasonable juror could find the facts alleged sufficient to amount to conduct "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Lightfoot v. District of Columbia*, Civ. A No. 04-1280, 2006 U.S. Dist. LEXIS 1358, at *31 (D.D.C. Jan. 10, 2006) (granting judgment on pleadings) (quotation marks omitted); *see also* cases cited in Opening Mem. at 26.  The most that Plaintiffs' letters of support show is that Defendants' decision to provide the disclosures generated controversy and that some members of the parish disagreed.  This comes nowhere close to meeting the "very demanding standard, only infrequently met" of the outrageousness requirement.  *Dale v. Thomason*, 962 F. Supp. 181, 184 (D.D.C. 1997); *see also Bernstein v. Fernandez*, 649 A.2d 1064, 1075 n.17 (D.C. 1991) (declining to follow IIED cases from other jurisdictions because of "the very strict standard of liability imposed by our District of Columbia case law.").

With respect to severity, Plaintiffs fail even their own recitation of the pleading requirement to "provide fair notice *and the grounds upon which it rests*."  Opp. at 34 (emphasis added).  Plaintiffs have not done so.  "Recovery is not permitted merely because conduct causes mental distress," *Black v. District of Columbia*, 480 F. Supp. 2d 136, 140 n.3 (D.D.C. 2007)

(citing *District of Columbia v. Thompson*, 570 A.2d 277, 290 (D.C. 1990)), and Plaintiffs' *only* allegation is the conclusory assertion that they have "suffered severe emotional distress, embarrassment and humiliation." Am. Complaint ¶ 78. It is firmly established that "vague allegations and conclusory statements do not satisfy the standard for a claim of intentional infliction of emotional distress." *Gharib v. Wolf*, 518 F. Supp. 2d 50, 57 (D.D.C. 2007).

Finally, Plaintiffs' assertion that the applicability of First Amendment protections is a jury question is, again, wrong. *See Raymen v. United Senior Association*, 409 F. Supp. 2d 15, 23 (D.D.C. 2006); *Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677 (Tex. App. 2001).[16]

## IV.   PLAINTIFF FIONA PARNIGONI CANNOT USE PROMISSORY ESTOPPEL TO CIRCUMVENT HER EMPLOYMENT CONTRACT (COUNT V).

Plaintiff's allegation that Ms. Berry orally reassured her that "the storm would soon pass" does not give rise to a claim for promissory estoppel. Opening Mem. at 28-29. As an employee of the school, the terms and conditions of Mrs. Parnigoni's employment were governed by her employment contract and not by an alleged verbal "promise" by Ms. Berry. Mrs. Parnigoni's status as an employee under contract both forecloses her ability to sue under this theory and renders unreasonable as a matter of law her alleged reliance on any promise.

Plaintiff Mrs. Parnigoni argues three things in response: first, that her promissory estoppel claim encompasses not only the alleged October 18, 2007 promise but also her alleged October 1, 2007 offer to resign, Opp. at 35-36; second, that she did *not* have a contractual relationship with the school because she had not yet signed a contract for the 2008-2009 school

---

[16] *Inland Mediation Board v. City of Panama*, 158 F. Supp. 2d 1120 (C.D. Cal. 2001), cited by Plaintiffs, is inapposite. In *Inland Mediation Board*, the court determined as a matter of law that a county agent was not protected by the First Amendment. The question for the *jury* was not whether the First Amendment applied, but whether a defendant was behaving as an agent of the county under contested facts.

year, *id.* at 36-37; and third, that the reasonableness of her reliance "presents a genuine issue of material fact necessitating a trial." *Id.* at 37.  Each of these arguments is insufficient.

Plaintiff's allegation that she offered to resign on October 1 is irrelevant to her promissory estoppel theory, as she does not allege that her decision not to resign was based on any promise by Defendants.  And her argument that "*there was no enforceable contract for employment for the 2008-2009 school year*," Opp. at 36 (emphasis in original), is equally without merit.  The question is not whether an existing contract contains terms expressly contrary to an alleged promise, but rather whether "there is an express contract *governing the relationship* out of which the promise emerged," because where parties have a contractual relationship, "there is no gap in the remedial system for promissory estoppel to fill." *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 71 (D.D.C. 2005) (quoting *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999)) (emphasis added).  Plaintiff admits the parties had an enforceable contract governing the conditions *and term* of Mrs. Parnigoni's employment, and that the terms of that contract did not include a promise of employment for the 2008-2009 academic year.  A "second bite at the apple in the event [plaintiff] fails to prove breach of contract," *Daisley*, 372 F. Supp. 2d at 71 (quotation marks omitted), is *exactly* what Plaintiff seeks, for her "promissory estoppel" claim is nothing more than a dressed-up and meritless claim for wrongful discharge.

Plaintiff's allegations must be understood against the backdrop of the presumption under District of Columbia law that all employment relationships, absent an express agreement to the contrary, are "at will" and can be terminated by the employer without cause.  *Choate v. TRW, Inc.*, 14 F.3d 74, 76 (D.C. Cir. 1994).  Per Mrs. Parnigoni's own allegations, she was a six-year employee of the school with a contractual term that was periodically extended and did not yet

20

include the 2008-2009 year.  Opp. at 36.  Therefore, per Plaintiff's own allegations, Mrs.
Parnigoni would, by operation of law, convert to an at-will employee when the 2007-2008 school
year ended; only a "'clearly expressed' contractual intent on the part of both the employer and
the employee," such as an extension of her contract, would overcome that at-will status.  *Choate*,
14 F.3d at 76 (citing *Minihan v. American Pharmaceutical Ass'n*, 812 F.2d 726, 727 (D.C. Cir.
1987)).  As a matter of law, it cannot have been reasonable for her to believe that a verbal
reassurance regarding her employment prospects for the following year constituted a guarantee
of future employment when (1) her current term was governed by a written contract, (2)
extensions of her employment term were, and had been in the past, handled by written
agreement, and (3) she would become an at-will employee until such a written agreement for the
following year was in place.  This count should be dismissed.[17]

## V.    THE DERIVATIVE "LOSS OF CONSORTIUM" CLAIMS ARE IN WHOLE OR IN PART NOT RECOGNIZED (COUNTS VI, VII, AND VIII).

Plaintiffs concede that "loss of consortium" is not a recognized cause of action in
Virginia, and they do not dispute that (1) the "loss of consortium" claims cannot survive if the
predicate claims are dismissed, and (2) the promissory estoppel claim (Count V) cannot, on
Plaintiffs allegations, function as a predicate claim in any event.  Opp. at 38.  For these reasons,
Counts VI, VII, and VIII should be dismissed.

---

[17] Contrary to Plaintiff's assertion that reasonable reliance is a jury issue, courts routinely decide
that a plaintiff's reliance is unreasonable as a matter of law, *see, e.g., Mamo v. District of
Columbia*, 934 A.2d 376, 385-86 (D.C. 2007), *cert. denied*, 128 S. Ct. 1670 (2008); *Ulliman
Schutte Const., LLC v. Emerson Process Power Management & Water Solutions*, No. Civ. A. 02-
1987, 2006 WL 1102838, at *16-18 (D.D.C. March 31, 2006); including on motions to dismiss,
*see, e.g.*, *Daisley*, 372 F. Supp. 2d at 71 n.5; *In re U.S. Office Products Co. Securities Litigat.*,
251 F. Supp. 2d 58, 73 (D.D.C. 2003); *Morris v. Runyon*, 870 F. Supp. 362, 373-76 (D.D.C.
1994).

Plaintiffs repeat, however, their argument that District of Columbia law applies to the case, and assert that the District has "left open" whether it recognizes parent-child consortium. *Id*. However, it has long been resolved that District of Columbia law does *not* recognize loss of consortium in the parent-child context. *See Parker v. Martin*, 905 A.2d 756, 764 (D.C. 2006); *Herbert v. District of Columbia*, 808 A.2d 776, 779 n.3 (D.C. 2002) (citing *District of Columbia v. Howell*, 607 A.2d 501, 506 (D.C. 1992)).[18]

In any event, Plaintiffs' argument for application of District of Columbia law is nothing but another manifestation of the two flaws that pervade their choice of law analysis:  neglecting that choice of law is determined for each claim separately, and neglecting that "the place of the injury" varies with the claim asserted.  The allegation that Plaintiffs have been deprived of one another's companionship and affection quintessentially alleges an injury in Virginia, to Plaintiffs' marital and family lives.  Am. Complaint ¶¶ 90, 96, 102.  Moreover, each such allegation is predicated upon an ancillary claim that the person whose consortium has been lost has themselves suffered mental distress, itself also an injury in Virginia.  *Id*. ¶¶ 89, 95, 101.  By again standing on their objection that "Plaintiffs' residence in Virginia is the only factor" pointing toward Virginia, Opp. at 38, Plaintiffs neglect that "place of the injury," for torts, "is the most important in the selection of the state of the applicable law."  *E.F. Hutton*, 664 F. Supp. at 1498.  Plaintiffs cite no cases in which District law has been applied to loss of consortium claims by residents of other states for injuries done to them in other states.  The sole case they cite, *Herbert v. District of Columbia*, 808 A.2d 776, 780 (D.C. 2002), is inapposite, as *Herbert* was a wrongful death case and the injury itself (a shooting) took place in the District of Columbia.

---

[18] *Howell* indicated that the issue "must be addressed to the court *en banc*," Opp. at 38, only in the sense that it would take an *en banc* court to *reverse* the repeated decisions so holding.

## VI. THE INTERFERENCE WITH ECONOMIC RELATIONS CLAIM IS DERIVATIVE OF THE DEFAMATION COUNT AND FAILS FOR THE SAME REASONS (COUNT IX).

This claim is derivative of the flawed defamation claim and fails with it.  Opening Mem. at 30-31.  Plaintiffs do not dispute that causing someone to break an economic relationship is not actionable unless one uses wrongful means to do so, and that the truthful disclosure of Mr. Parnigoni's criminal conviction, standing alone, could not support liability even if subjectively motivated by a desire to warn parents away from Fiona Parnigoni's camp.  The only thing Plaintiffs plead to satisfy this wrongfulness requirement of the tort is "dissemination of the defamatory letters."  Am. Compl. ¶ 108.  Plaintiffs' allegations are thus insufficient because, as a matter of law, the letters cannot support the unreasonable defamatory inferences Plaintiffs attempt to read into them and are otherwise not actionable as defamation.  *See supra*, Part I.

## VII. THE COMPLAINT ALLEGES NEITHER A MISREPRESENTATION OF DEFENDANTS' INTENT TO DISCLOSE MR. PARNIGONI'S STATUS NOR A DUTY TO NOTIFY PLAINTIFFS OF ANY SUCH INTENT (COUNT X).

Plaintiffs' argument that Defendants were under a duty to anticipate and warn Plaintiffs, before they enrolled their son in the nursery school, that Defendants might later inform the community of Mr. Parnigoni's conviction because the tort "imposes a duty in favor of all those third parties who the defendant knows and should reasonably foresee will rely on the information," Opp. at 41 (citing *Molecular Technology Corp. v. Valentine*, 925 F.2d 910, 916 (6th Cir. 1991)), is easily dismissed.[19]  Plaintiffs confuse negligent misrepresentation claims based on affirmative misrepresentations, *see Restatement (Second) of Torts* § 552, with claims based on failures to disclose.  *See id.* § 551(1).  Plaintiffs are alleging the latter.  *See* Am. Compl.

---

[19] *Molecular Technology Corp.* is completely inapposite.  Aside from the fact that it was a securities fraud action decided under Michigan law, the alleged "misrepresentation" in *Molecular Technology Corp.* concerned affirmative misstatements in a debenture offering circular rather than, as here, an alleged failure to warn.

¶ 113.  An affirmative duty to disclose facts is much narrower than a duty not to affirmatively misrepresent them, and narrowly applies only to those in positions of "fiduciary or other similar relation of trust and confidence," such as accountants, lawyers, and others in the business of providing information.  *Restatement (Second) of Torts* § 551(2)(a).  Plaintiffs cite no authority to suggest that a nursery school has such a legal fiduciary duty to its employees or the parents of prospective students.  Indeed, the consequences of such a duty to the liability of educational institutions (which could be required to disclose all facts potentially material to the enrollment of a student, and effectively be prohibited from making any material changes to the conditions of the children's attendance once enrolled) would be staggering.  The "existence of . . . a legal duty owed by the defendant to the plaintiff[] is a question of law, to be determined by the court," *Smith v. Hope Village, Inc.*, 481 F. Supp. 2d 172, 185 (D.D.C. 2007) (quotation marks omitted; alteration in original), and the Court can dispose of this claim now.

The amended complaint further remains deficient with respect to the requirement that there was any misrepresentation at all, because it does not allege that Defendants had formulated a plan in August (the time of the alleged omission) to make the disclosure in October.  *See* Opening Mem. at 33.  Plaintiffs' contention that this is "not a proper determination for a motion to dismiss," Opp. at 41, is wrong.  It is an element of a claim of misrepresentation of intention that the intention exist at the time of the misrepresentation.  *See Restatement (Second) of Torts* § 530.  Plaintiffs have not alleged that this was the case, presumably because their other allegations contradict it.  *See, e.g.*, Am. Compl. ¶¶ 34, 36.

Finally, Plaintiffs misunderstand Defendants' point that Plaintiffs cannot state a claim for *not* being told that the church might in the future disclose Mr. Parnigoni's sex offender

registration when they allege that Mrs. Parnigoni *was* so informed. *See* Opening Mem. at 32.[20]

Plaintiffs' sole argument is that the scope of the disclosure was wider than she was warned of, and that the Court thus cannot determine on a motion to dismiss that she consented to the disclosure. Opp. at 40. But the Court can determine as a matter of law whether the Plaintiffs' expectation that Mr. Parnigoni's criminal conviction and continuing status as a registered sex offender would remain undisclosed to the community, under those circumstances, was reasonable. Plainly it was not.

### CONCLUSION

The Amended Complaint should be dismissed in its entirety with prejudice for failure to state a claim upon which relief can be granted.

Respectfully Submitted,

JENNER & BLOCK LLP

By:    /s/  David W. DeBruin

David W. DeBruin (D.C. Bar No. 337626)
Luke C. Platzer (D.C. Bar No. 501274)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6000
(202) 639-6066 (fax)

*Counsel for Defendants*

Date:  August 8, 2008

---

[20] Particularly unusual is Plaintiffs' speculation in their brief – an accusation they avoid making in their complaint – that Ms. Berry might have "obtained details regarding Mr. Parnigoni's criminal conviction from Mrs. Parnigoni under false pretenses." Opp. at 40 n.9. Defendants would not have needed to "obtain" anything from Mrs. Parnigoni to make the disclosures. The facts of Mr. Parnigoni's criminal conviction and sex offender registration are matters of public record. *See Parnigoni v. District of Columbia*, 933 A.2d 823 (D.C. 2007).

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 8th day of August 2008, I caused a copy of the foregoing Reply in Support of Defendants' Motion to Dismiss to be served upon the following via the Court's ECF system:

>     Sundeep Hora
>     Leslie David Alderman, III
>     ALDERMAN, DEVORSETZ & HORA PLLC
>     1025 Connecticut Ave., N.W.
>     Suite 615
>     Washington, DC 20036
>
>     *Counsel for Plaintiffs*

                                        /s/  David W. DeBruin

                                        David W. DeBruin